HABEN vs. HARSHAW.

*April 26 — May 11, 1880.*

PARTNERSHIP. *(1) May assume individual debt of partner.   (2) Evidence
  to show firm liability.*
FRAUDULENT CONVEYANCE.   *(3) Preference not conclusive of fraud.*

1. A partnership may assume the individual debts of one of its members,
   and none but existing creditors can question the transaction.
2. Where a trading firm consisted of a husband and his wife and the father
   of the latter, the wife having a separate estate, and her father living
   with the other partners as a member of the family, without paying
   board, and without any account being kept between them, these facts
   may properly be given in evidence to show that an indebtedness which
   included store and family expenses, and for which the mortgage in dis-
   pute was given, was a firm indebtedness.
3. Though the fact that there was a preference given to certain creditors in
   executing a mortgage, may be considered by the jury with the other
   facts and circumstances in the case, in determining whether the mortgage
   is fraudulent, there is no error in an instruction that such preference "is
   not an evidence of fraud."

APPEAL from the County Court of *Winnebago* County.
Replevin. The goods in controversy formed part of the
stock in trade of F. X. Haben & Co., and are valued at about
$75. Plaintiff claims them by virtue of a chattel mortgage
from the firm. Defendant justifies as sheriff under an attach-
ment sued out by certain creditors of said firm.

The members of this firm were F. X. Haben and his father-
in-law, James Nagle. The business of the firm was that of a
retail grocery, Nagle furnishing most of the capital. He was
an old man, incapable of active business, and lived with
Haben. The store in which the business was carried on was
owned by Mrs. Haben. Plaintiff was a brother of F. X.
Haben, and was engaged in the clothing trade. The indebt-
edness for which the mortgage was given to the plaintiff was
for goods furnished to the family of F. X. Haben; for money
loaned to him, and used, as he testified, in the business; and

also for goods furnished upon orders of F. X. Haben, given in payment for work upon the store building, and for merchandise used by the firm. The account was kept, upon the plaintiff's books, in the name of F. X. Haben.

On July 1, 1876, the firm, with the consent of both partners, gave to plaintiff its note for $300 to pay this account, which then amounted to that sum; and on June 1, 1878, a further account of the same kind having accrued, amounting to $109.25, again gave its note for the last named amount. On September 10, 1878, both these notes were taken up, and a new note given for the sum of $409.25, payable one day after date, and secured by chattel mortgage on the entire partnership stock, valued at $600; under which mortgage plaintiff took possession the same day.

Upon the trial, the plaintiff was allowed, against defendant's objection, to introduce certain evidence as to the manner in which the members of the firm lived, and how their necessary expenses of living were paid. The nature of this testimony is indicated in the opinion.

The court charged the jury that the firm of Haben & Co. had the right, with the knowledge and consent of all the members, to assume the individual debt of a partner, and that, except as against existing creditors of the firm, it would thereby become a valid firm obligation. It also charged, among other things, that, " under the law that exists now, it is not an evidence of fraud, that a man prefers one creditor to another."

There was a verdict and judgment for the plaintiff; and defendant appealed.

For the appellant there was a brief by *Finch & Barber*, and oral argument by *C. W. Felker:*

A copartnership has no right to transfer partnership property for the payment of the individual debt of one partner, to the exclusion of the firm creditors. *Keith v. Fink*, 47 Ill., 274; *Wilson v. Robertson*, 21 N. Y., 587; *Kirby v. Schoonmaker*, 3 Barb. Ch., 48. The fraud upon the creditors of the

copartnership was committed, not when the notes were given, but when the chattel mortgage was executed, when the firm property was *appropriated* to pay the notes. At least, the entire business should have been regarded as one transaction, and, if any part of it was tainted with fraud, the whole was bad. *Coolidge v. Melvin,* 42 N. H., 510; Bump on Fraud. Conv., 470. The court in effect instructed the jury that the attachment plaintiffs could not attack the mortgage, because they were not creditors at the time the original notes were given. Such a rule would encourage and assist fraud. The true rule is, that an intent to defraud antecedent creditors is *prima facie* evidence of an intent to defraud subsequent creditors. *Horn v. Volcano Co.,* 13 Cal., 62; *Carpenter v. Roe,* 10 N. Y., 227; *Hurdt v. Courtenay,* 4 Met. (Ky.), 139. Paying off one debt by contracting another is not getting out of debt. In such instances the subsequent creditors are subrogated to the rights of the creditors whose claims their means have been used to pay. *Madden v. Day,* 1 Bailey, 337; *Mills v. Morris,* Hoff. Ch., 419; *Savage v. Murphy,* 34 N. Y., 508; *Holmes v. Penney,* 3 K. & J., 90; *Brown v. McDonald,* 1 Hill's Ch., 297; *Wilson v. Buchanan,* 7 Gratt., 334; *Churchill v. Wells,* 7 Cold., 364. In this case the court not only held that the subsequent creditors could not attack the validity of the transfer, but assumed as a fact that the prior debts of the firm had been paid. 2. The charge of the court upon the subject of preferring creditors was erroneous. Although a debtor may make choice of the person whom he will pay, the very fact of preference may be considered by the jury in determining the question of good faith. The right must be exercised in such way as not to hinder and delay creditors. *Stoddard v. Butler,* 20 Wend., 507; *Kilby v. Haggin,* 3 J. J. Marsh., 208; *Crowninshield v. Kittridge,* 7 Met., 520; *Bunn v. Ahl,* 22 Pa. St., 387; *Robinson v. Stewart,* 10 N. Y., 189.

*Moses Hooper,* for the respondent:

If any fraud upon the creditors of F. X. Haben & Co. was

intended or perpetrated, it was when the notes were first given to balance plaintiff's accounts. But there is no fact in the history of the matter indicating fraud. The accounts were really firm accounts. The family of F. X. Haben was really the firm, and the merchandizing and support of the family were all one joint operation of the firm. These notes of the firm having been duly given, there could be no constructive fraud in making a new firm note or mortgage to secure their payment. A creditor may lawfully seek preference. *Ferguson v. Kumler*, 11 Minn., 104; *Keen v. Kleckner*, 42 Pa. St., 529; *Lord v. Fisher*, 19 Ind., 7; *Wheaton v. Neville*, 19 Cal., 41; Bump on Fraud. Conv., 217–21. But even if the accounts were private, the charge of the court that the firm had the right to assume payment thereof, as against all the world but existing creditors, was correct. The authorities go even further, and permit partners to pay individual debts when *insolvent*, if there is no actual fraud intended. *Sigler v. Knox Co. Bank*, 8 Ohio St., 511; *Schaeffer v. Fithian*, 17 Ind., 463; *National Bank v. Sprague*, 20 N. J. Eq., 13.

ORTON, J. It seems to us that the uncontradicted evidence in this case very conclusively proved that the original indebtedness for which the chattel mortgage of the firm of F..X. Haben & Co. was given to the plaintiff, was the indebtedness of the firm, and this the jury may be presumed to have found; and therefore most of the errors complained of became immaterial, and were cured by the verdict.

. It was certainly competent to show, by the manner in which the firm conducted their business, that this indebtedness arose out of it, and that it was partnership indebtedness; and therefore the questions objected to as to the manner in which the partners lived, and as to their domestic and business relations with each other, while conducting the business of the firm, were proper, as bearing directly upon the question in dispute.

It seems that James Nagle, one of the partners, was the

father-in-law of F. X. Haben, and had furnished some part
of the money capital, but was very old and feeble; and did no
business personally, and that he and his wife lived with and
were taken care of by F. X. Haben and his wife, and that they
paid no board, and no accounts were kept between them; and
that Margaret Haben, the other partner, was the wife of F.
X. Haben, and owned the store building; and that they all of
them lived together as one family, over the store in which the
goods were kept and sold, and received their joint support out
of the business; and that this indebtedness was incurred for
store and family expenses, and for the use of the general busi-
ness.

The matter complained of in the charge of the court, that
the firm had the right to assume the' indebtedness, even if it
were the individual indebtedness of F. X. Haben, and that
none but existing creditors could question it, was quite imma-
terial in view of the above evidence; but, as based upon the
assumption that it was the individual indebtedness of F. X.
Haben, it was not error. See *Sigler v. Knox Co. Bank*, 8
Ohio St., 511, and other authorities cited in the brief of the
respondent's counsel.

The matter of exemption was properly submitted to the
jury, depending upon a severance of the partnership interests
in the property; and there was no error in charging the jury
that, in case of such exemption, the fraudulent intent, in
order to defeat the mortgage, need relate only to the part not
exempt, because fraud as to any part of the debt or property
would be as fatal to the mortgage as fraud as to the whole.

It would be clearly incorrect to say that preference of cred-
itors in giving the mortgage was "an evidence of fraud,"
although such fact might be properly considered by the jury,
with all of the other facts and circumstances connected with
the transaction, as bearing upon the question. The charge of
the court, therefore, that preference of creditors was *not* "an
evidence of fraud," was not error. The language "*an evi-*

*dence* of fraud," is too strong, and might very well be understood by the jury as meaning conclusive *proof* of fraud.

The other errors complained of become technical and unimportant in view of the real merits of the case, supported by the undisputed evidence; and the very full and fair charge of the court on the main question, of the fraudulent intent of the transaction, coupled with the unquestionable legal proposition, that, if there was no intent to defraud, the firm had the right to prefer their creditors, was a substantially correct presentation of the whole case.

The jury must be presumed to have found against the defendant on the question of fraud thus fairly and fully presented; and we can find no error in the record which would justify a disturbance of the verdict.

*By the Court.* — The judgment of the county court is affirmed, with costs.