## GEORGE F. WOODMANSIE v. Z. HOLCOMB.

1. PARTNERSHIP PROPERTY; *Creditors; Lien; Transfer.* As a general rule, the simple contract creditors of a partnership have no lien upon the partnership property until it is acquired by process of law; and a *bona fide* transfer of the partnership property, while it remains within the control and possession of the firm, made upon sufficient consideration, and with the consent of all the partners, places it beyond the reach of the partnership creditors.

2. ———— *Transfer; Bona Fides; Individual Debt.* While the partnership remains in existence and in a solvent condition, it may, upon a *bona fide* consideration, all the partners assenting, transfer and appropriate the firm property in payment of the individual debt of one of its members.

*Error from Brown District Court.*

ACTION brought by *Holcomb* against *Woodmansie*, to recover damages for the alleged conversion by the defendant of a stock of groceries owned by the plaintiff. Trial at the January Term, 1884, and verdict for plaintiff for $591.06. Motion for a new trial overruled, and judgment accordingly

for plaintiff. The defendant brings the case here. The facts
are sufficiently stated in the opinion.

*James Falloon,* for plaintiff in error.

*C. W. Johnson,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is an action brought by Zephaniah
Holcomb, alleging that on or about August 11, 1882, George
T. Woodmansie unlawfully seized, carried away and converted
to his own use a stock of groceries owned by the plaintiff, and
to his damage in the sum of $5,200. The defendant, in justi-
fication, claimed that the property was seized by him as con-
stable under certain writs of attachment duly issued against
Holcomb & Lilly, a partnership composed of T. W. Holcomb,
a son of the plaintiff, and one H. C. Lilly, and that the goods
were subsequently sold upon judgments rendered against said
firm in the attachment suits, and the proceeds of the sale ap-
plied in satisfaction of such judgments. The plaintiff claimed
that he had purchased and was the owner of the stock of goods
before they were levied upon by the defendant, while the de-
fendant claimed that the consideration of the alleged purchase
by the plaintiff consisted mainly of the individual debts of T.
W. Holcomb to the plaintiff, and that the transfer was made
with the intent to hinder and delay the creditors of Holcomb
& Lilly in the collection of their debts. The cause was tried
with a jury, and the verdict and judgment were in favor of the
plaintiff. The defendant brings the case here for review.

The principal question presented and urged by plaintiff in
error arises upon the refusal of the court to charge the jury
as follows:

"The court instructs the jury that the creditors of partners
have a prior right to look to the partnership property, for the
payment of their debts, to the creditors of the individuals
composing the partnership. And if any creditor of a member
of a partnership should obtain all the partnership property in
payment of his claim against the individual member of the
partnership, then such sale would be fraudulent as to the part-

nership creditors; and if in a suit brought against the partnership, no property could be found of the firm or the individuals composing the firm out of which to satisfy any judgment which might be rendered therein, then such firm creditors could levy execution upon their said judgments on the property so sold to a creditor of an individual member of the firm." .

This request contains substantially the proposition that a partnership, however solvent, cannot in good faith or otherwise make a sale and transfer the title of partnership effects where the consideration is the payment of the individual indebtedness of a member of the partnership. This proposition cannot be sustained. While it is true as a general rule, that as between partners, and also as between firm and individual creditors, the partnership debts have priority over individual debts as against partnership property, yet the simple contract

1. Partnership property; creditors; lien; transfer.

creditors of a partnership have no lien upon its property until it is acquired by process of law. They have what has been termed a *quasi* lien, but this arises and is derived solely through the equitable lien of the partners. Each partner has a right to have the firm assets applied in discharge of the firm liabilities, and to the payment of whatever may be due him when the firm indebtedness is discharged and the partnership closed up. This equitable claim of the partners may in many cases, with the assent of the partners, be made available to the creditors. But as no such claim or equity exists in the creditors independent of the partners, a *bona fide* transfer of the partnership property made with the consent of all the partners, places it beyond the reach of the firm creditors. As has been stated :

"While the partnership is solvent and going on, the creditors have no equity, strictly speaking, against the effects of the partnership; neither have they any lien on the partnership effects for their debts. All that they can or may do is, to proceed by an action at law for their debts against the partners, and having obtained judgment therein, they may cause the execution issuing upon that judgment to be levied upon the partnership effects, or upon the separate effects of each partner, or upon both. There being, then, no lien and no equity in favor of the creditors against the partnership effects, it follows that those effects are susceptible of being legally trans-

ferred *bona fide* for a valuable consideration to any person whatsoever, and as well to the other partners as to mere strangers." (Story on Partnership, § 258.)

While the partnership remains in existence and is solvent, we think it has the right, with the consent of all its members and upon *bona fide* consideration, to sell and

2. Transfer; bona fides; individual debt.

transfer the firm property in payment of the individual debt of one of the firm. Under such circumstances, the transfer could not be held to be a fraud upon the firm creditors. The decisions of the courts have gone farther than this, and although not unanimous, the weight of authority seems to be that mere insolvency, where no actual fraud intervenes, will not deprive the partners of their legal control over the property and of the right to dispose of the same as they may choose; and where the separate creditor purchases from the firm in good faith and the individual indebtedness is a fair price for the property purchased, such purchase cannot of itself be held fraudulent as against the general creditors of the firm. (*Sigler & Richey v. Knox County Bank,* 8 Ohio St. 511; *Schmidlatt & Bros. v. Currie & Co.,* 55 Miss. 597; *Case v. Beauregard,* 99 U. S. 119; *National Bank of the Metropolis v. Sprague,* 20 N. J. Eq. 13; *Wilcox v. Kellogg,* 11 Ohio, 394; *Gwin v. Selby,* 5 Ohio St. 96; *Allen v. Center Valley Co.,* 21 Conn. 130; *Rice v. Barnard,* 20 Vt. 479; *Haben v. Harshaw,* 49 Wis. 379; *White v. Parish,* 20 Tex. 688; *Schaeffer v. Fithian,* 17 Ind. 463; *McDonald v. Beach,* 2 Blackf. 55; *Ruffin, ex parte,* 6 Ves. 119; *Whitton v. Smith,* 1 Freeman's Ch. 231; *Freeman v. Stewart,* 41 Miss. 138; *Potts v. Blackwell,* 4 Jones [N. C.] Eq. 58.)

It follows from these considerations that the instruction in the form requested was rightly refused.

Exceptions were also taken to the refusal of the court to give other instructions requested by the defendant, but from an examination of the record it appears that the doctrine contained in these requests was aptly and fully stated by the court in its general charge.

The judgment of the district court will be affirmed.

All the Justices concurring.