## PEPPER, ARNOLD & CO. *vs.* CYRIL C. PECK.

When a copartnership claim is, with the consent of the copartners and in good faith, settled by payment of the individual debt of one of the copartners, there is an accord and satisfaction of the copartnership claim.

When such a settlement is executed, an omission to make the proper entries on the copartnership books is immaterial.

Such a settlement is not in itself fraudulent as against the copartnership creditors.

PLAINTIFF's petition for a new trial.

*May* 17, 1890. STINESS, J. The petition shows that the plaintiff, Pepper, had done work for the defendant for several years before the formation of the present firm, taking his pay therefor in groceries from the defendant's store. Arnold became his partner, under the name of Pepper, Arnold & Co., and it was then mutually agreed that they should continue to do work for the defendant, to be paid for in the same way, and that the amount so paid should be charged to Pepper's account when the settlement was made. The charges for the work done were entered upon the plaintiffs' books against the defendant, and an account was rendered to him July 1, 1883, for the amount then due, at which time his bill against Pepper was larger than the plaintiff's bill by thirty or forty dollars, which balance Pepper paid to him in cash. It did not appear whether at this time the firm was solvent or not. No credit, however, was entered on the books of the firm, and when they made an assignment, August 23, 1883, the charge against the defendant appeared as an open account. This action is brought by the assignee of the firm, who claims the right to a judgment against the defendant, notwithstanding the agreement and settlement as stated, upon the ground that the defendant cannot apply the debt of an individual partner to the payment of a firm debt. Although the defendant's claim is referred to in the petition as a set-off, it is more properly a payment. It does not rest upon an executory agreement, but it is an executed settlement, if it is anything. If the parties had the right to settle and did settle their respective claims as stated, the omission of the firm to enter a credit upon its books neither alters the fact, nor affects the rights of the parties. The question then is, whether a settlement so made bars the action on the account. We think it does. It is clear that partners have the control and disposition of their joint property, and they may insist that it shall not be applied to the payment of individual debts. But it follows from this right of control that they may assent to this; and so, when a firm claim is *bonâ fide* settled by payment of the individual debt of one of the partners, it operates as an accord and satisfaction of the claim of the firm. It is, in substance, the same as though the debtor paid his debt to the firm in money, which the individual partner, with the consent of

his copartners, then drew out on his own account and applied to the payment of his own debt.    In the cases relied on by the plaintiffs, this element of assent is wanting; and this distinction is expressly noted in *Williams* v. *Brimhall*, 13 Gray, 462; the court also adding, citing *Homer* v. *Wood*, 11 Cush. 62, that if the agreement to set off a debt due to a firm against a debt due from one of the copartners is executed, an action cannot be maintained in the name of the firm for their debt, even if it has been fraudulently discharged by one of the copartners.    The principle of this latter rule is stated by Baron Parke in *Wallace* v. *Kelsall*, 7 M. & W. 264, "that a person cannot be allowed, as a plaintiff in a court of law, to rescind his own act by joining his copartner with him." But in cases like the present, where both partners have concurred, of course neither they nor their voluntary assignee in their names can upset an executed settlement, simply because they have not entered it on their books.    The law applicable to this case is well and cautiously laid down in *Woodmansie* v. *Holcomb*, 34 Kans. 35, as follows: " While the partnership remains in existence and is solvent, we think it has the right, with the consent of all its members, and upon *bonâ fide* consideration, to sell and transfer the firm property in payment of the individual debt of one of the firm. Under such circumstances, the transfer could not be held to be a fraud upon the firm creditors.    The decisions of the courts have gone farther than this, and, although not unanimous, the weight of authority seems to be that mere insolvency, where no actual fraud intervenes, will not deprive the partners of their legal control over the property, and of the right to dispose of the same as they may choose; and where the separate creditor purchases from the firm in good faith, and the individual indebtedness is a fair price for the property purchased, such purchase cannot of itself be held fraudulent as against the general creditors of the firm."    See, also, *Sexton* v. *Anderson*, 95 Mo. 373; *Jewett* v. *Meech*, 101 Ind. 289; *Davis* v. *Spencer*, 24 N. Y. 386; Lindley on Partnership, Wentworth's notes (1888), \*661; Collyer on Partnership, \*448.

Applying this rule to the case before us, we think the nonsuit was properly granted, and the petition for new trial must be denied.

*Petition dismissed.*

*J. Erastus Lester*, for plaintiffs.

*William W. Douglas & Samuel T. Douglas*, for defendant.